# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADRIENNE HARMON-BECKWITH, ) | |
| ) | No. 1:23-cv-00240 |
| Plaintiff, ) | Honorable Martha M. Pacold |
| ) | |
| v. ) | |
| ) | |
| ZEP INC., and ACUITY SPECIALTY ) | |
| PRODUCTS, INC. ) | |
| Defendants. ) | |

**First Amended Complaint and Demand for Jury Trial**

Plaintiff Adrienne Harmon-Beckwith by and through her attorney, Tamara Holder, brings this action against defendants Zep Inc. and Acuity Specialty Products, Inc. (hereinafter collectively referred to as "Zep"), for violations of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq*. In support of her First Amended Complaint, Ms. Harmon-Beckwith states the following:

**VENUE AND JURISDICTION**

1. This Court has proper jurisdiction over the subject matter hereof and the parties hereto pursuant to 735 Illinois Compiled Statute 5/2-209 (a)(1) and (2) because defendants' tortious acts occurred in Cook County, Illinois.

2. Venue is proper in the Circuit Court of Cook County pursuant to 735 Illinois Compiled Statute 5/2-101 because the events giving rise to the instant claims occurred, in part, in Cook County, Illinois.

3. This case is being filed in the law division because the amount in controversy exceeds $50,000.

## PARTIES

4. Plaintiff Adrienne Harmon-Beckwith is a resident of Chicago, Illinois, and individual citizen of the State of Illinois. Hired by defendants in March 2019, she is a nonexempt employee of defendants within the meaning of 775 ILCS 5/2-101(A).

5. Defendant-Employer Zep Inc. was never, and is not presently, a domestic Illinois corporation. Zep Inc. was never, and is not presently, qualified with the Secretary of State to do business in the State of Illinois. During all relevant times, Zep Inc. was an entity that did business in the State of Illinois without identifying a state of origin and, as such, was a citizen of Illinois. Zep Inc. is an "employer" within the meaning of 775 ILCS 5/2-101(B).

6. Defendant-Employer Acuity Specialty Products, Inc., is a Georgia corporation, headquartered in Atlanta, that, all times relevant, was registered to do business in Illinois although was not presently in good standing. It is an "employer" within the meaning of 775 ILCS 5/2-101(B).

7. Upon information and belief, and as recited by Local Rule 3.2 Notification of Affiliates, filed by Acuity, and attached as Exhibit 1, it is the sole affiliate of Zep Inc. and therefore acknowledges that it is the principal, and director-in-fact of Zep Inc., and is therefore liable for the acts of its agent Zep Inc.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On February 17, 2002, Ms. Harmon-Beckwith filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that defendants engaged in race (Black) discrimination and retaliation. The charge was cross-filed with the Illinois Department of Human Rights ("IDHR").

9. On August 25, 2022, the EEOC issued a Notice of Right to Sue, attached as Exhibit 2. Ms. Harmon-Beckwith forwarded the EEOC's Notice of Right to Sue to IDHR and requested that IDHR issue its finding. On October 4, 2022, the IDHR issued a Notice of Dismissal and Order of Closure, attached as Exhibit 3.

## FACTS OF THE CASE

### Zep falsely claims it maintains a safe and inclusive workplace

10. Founded in 1937, Zep, Inc. is a producer, marketer, and service provider of commercial, industrial, institutional, and consumer cleaning products. Zep sells its products throughout Illinois, at stores including but not limited to: The Home Depot, Lowe's, True Value. Ace, Menard's, and Walmart.

11. At all times relevant, Zep publicly claimed that it has a "values framework" called S.P.E.E.D.: Stewardship; Passion for problem solving; Empowerment; Expertise; and, Doing the right thing: "We expect our people to understand ethical boundaries and be inclusive of other backgrounds, ideas, and perspectives. Demonstrating honesty, respect and integrity in all actions is always expected."

12. At all times relevant, Zep also publicly claimed to have "employee action committees and diversity and inclusion roundtables to continue our commitment to an inclusive workplace that reflects the uniqueness of its employees, customers, and suppliers."

13. On or about March 12, 2019, Ms. Harmon-Beckwith, who is Black, began to work for Zep, in Chicago, as an Account Manager, earning an hourly wage of $19.18, with the potential to earn commission and a performance bonus.

14. Upon her hiring, Zep gave her an Employee Policy Handbook, that stated, in part, that welcomed her to "the Zep team," and stated it maintained "Affirmative Action Plans" for minorities and women, to name a few. It further stated, "It is the responsibility of each supervisor and manager to avoid any discriminatory action in any phase of employment."

15. Also upon her hiring, Zep gave her a Discrimination and Harassment Free Workplace Policy, stating that prohibited forms of harassment included but were not limited to: "repeated sexual innuendoes, racial or sexual epithets, derogatory slurs, off-color jokes, propositions, threats or suggestive or insulting comments or sounds."

16. Zep further stated in its Handbook that it "will not tolerate any retaliation against an employee for making a good faith harassment or discrimination complaint or for cooperating in a harassment or discrimination investigation."

17. Zep further stated in its Handbook that it had an "open door policy," and "believes every employee should be able to talk to his or her manager about concerns or suggestions without fear of reprisal."

18. During all times relevant, Zep entered into non-discrimination agreements with its partners. As just one example, it has Code of Conduct with Siemens, whereby it agrees to:

   a. Promote equal opportunities and treatment of employees, irrespective of skin color, race, nationality, ethnicity, political affiliation, social background, disabilities, gender, sexual identity and orientation, marital status, religious conviction, or age.
   b. Refuse to tolerate any unacceptable treatment of individuals such as mental cruelty, sexual harassment or discrimination including gestures, language and physical contact, that is sexual, coercive, threatening, abusive or exploitative.

**Ms. Harmon-Beckwith is exposed to various forms of racial discrimination**

19. Ms. Harmon-Beckwith's job required that she revive accounts, which would provide her with a commission for each account she revived. However, Zep engaged in a pattern of taking the revived accounts away from her, giving them to a white account manager, and then handing her more dead accounts to revive; thereby, depriving her of the opportunity to earn the commission.

20. On or about March 2020, at the beginning of the COVID-19 pandemic, Ms. Harmon-Beckwith began to work from her home, located in Chicago. While working from home, she participated in Zep virtual "Wedge" training sessions.

21. On or about September 2021, Zep demoted Ms. Harmon-Beckwith – the only Black employee on the team - without cause, where new accounts did not bill more than $500/annually.

4

**Zep Executive Repeatedly Uses a Known Racial Slur
and Ms. Harmon-Beckwith Immediately Complains**

22. On November 18, 2021, Ms. Harmon-Beckwith participated in a virtual Zoom training session, facilitated by Zep Vice President of Sales Tim Masters, along with at least a dozen other colleagues. Ms. Masters, a Texas native, had worked for Zep for at least 20-years.

23. During the virtual session, Mr. Masters said something to the effect of, "<u>This may offend some people but....</u>" <u>and then repeatedly used the known racial slur "coon-ass," as he described Black workers in the South</u>.

24. Ms. Harmon-Beckwith was the only Black person in the virtual room when Mr. Masters repeated the above-mentioned known racial slur, in the presence of over 20 other employees.

25. Nobody voiced an objection to Mr. Masters' repeated use of the known racial slur. As a result, Ms. Harmon-Beckwith felt scared and unsafe.

26. On November 19, 2021, <u>the next day after the incident</u>, she emailed her complaint to Susan Wozniak from Human Resources, Zep Senior Vice President Charles Abate, and Zep Director Nicholle Wersland, believing that Zep had an "open door policy" as stated in its handbook.

27. Ms. Wozniak assured her that the situation would be "handled."

28. Then, on November 26, 2021, the day after Thanksgiving, Ms. Harmon-Beckwith received a call from a number that she did not know. When she answered, a man on the other end said "This is Tim," and then hung up.

29. On November 30, 2021, she emailed HR and the other above-mentioned people, about what had occurred over the holiday weekend. She stated that she was uneasy, unable to sleep and was afraid for her personal safety.

**Zep Engages in a Silent Cover-Up and Attempt to Push Plaintiff Out**

30. Over two weeks later, on December 17, 2021, Ms. Harmon-Beckwith sent an email to Ms. Wozniak, stating she was disturbed there had not been a follow-up to her complaint.

31. Shortly thereafter, Ms. Wozniak emailed her, "I can assure you that I take this very seriously and I am actively pursuing a resolution."

32. On December 18, 2021, Matt Duncan, an officer with the company who was also its Chief Human Resources Officer, told Ms. Harmon-Beckwith that he <u>"confirmed that Mr. Masters used the slur," but Mr. Masters "thought it was not a slur…"</u>

33. Later that evening, on December 18, 2021, Ms. Harmon-Beckwith emailed Mr. Duncan, stating that she objected to Zep's response.

34. Ten days later, on December 28, 2021, Mr. Duncan finally responded, defending that Mr. Masters did not understand coon-ass to be an "inappropriate racial term."

35. On January 5, 2022, Ms. Harmon-Beckwith spoke to Mr. Duncan, <u>stating it was an insult to her intelligence for Zep to think that she would believe that Mr. Masters, who lives and works in the South, did not know "coon-ass" was a racial slur</u>. She stated that she felt like she was being "bullied into acquiescence."

36. Ms. Harmon-Beckwith then told Mr. Duncan that, after she complained, her supervisor started nitpicking her work. <u>She specifically said that she felt that this was a form of retaliation, and an effort to push her out of her job</u>.

37. Mr. Duncan then said he once worked for a company where "the only way that his attitude was going to change" was if he "changed his environment."

38. Then he said, "Would you like me to find out if there's a way to help you to leave?"

39. In response, Ms. Harmon-Beckwith asked him if it was a trick question. He then said, since she "couldn't get over it," he was going to give her a "transition plan" that allowed her "to look for a job somewhere else."

6

40. In response, she stated that she liked her job, that she was disappointed by Zep's response, and that she was looking forward to being with the company for a long time.

41. Then, without further discussion, on January 21, 2022, Mr. Duncan emailed Ms. Harmon-Beckwith a Separation Agreement and Release of Claims, stating, in part, "<u>this confirms our agreement with respect to the termination</u> of your employment with Acuity Specialty Products, Inc., a wholly-owned subsidiary of Zep Inc," thereby acknowledging the agency relationship between the two entities.

42. The "agreement" offered Ms. Beckwith $8,842, payable as taxable, wages over 8-weeks, in exchange for her departure and confidentiality. She refused to sign this agreement or leave her job.

43. On February 17, 2022, Ms. Harmon-Beckwith filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission, and cross-filed with the Illinois Department of Human Rights.

44. Then, on or about April 2022, Zep told Ms. Harmon-Beckwith that they were "promoting" her. In reality, it was a continued, retaliatory effort to push her out by giving her more "old-inactive" (dead) accounts disguised as a better book of business.

45. As a result of Zep's continued retaliation of Ms. Harmon-Beckwith, her commissions have suffered.

**COUNT I**
**IHRA, 775 ILCS 5/2**
**Race Discrimination – Hostile Work Environment**
*Against all Defendants*

46. Plaintiff Adrienne Harmon-Beckwith realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

47. By and through its conduct in allowing a hostile and abusive work environment, defendants and its actual and/or apparent agents, and/or employees discriminated against plaintiff on the basis of her race (Black), in violation of the Illinois Human Rights Act 775 ILCS 5/2.

48. Defendants and its actual and/or apparent agents, and/or employees intentionally subjected plaintiff to unwanted harassment on the basis of her race (Black) and knowingly created a hostile condition and work environment, all in violation of the Illinois Human Rights Act 775 ILCS 5/2.

49. The conduct of defendants and its actual and/or apparent agents, and/or employees towards plaintiff, was performed intentionally and with malice and/or was taken with reckless indifference to plaintiff's protected rights.

50. As a proximate result of the foregoing act and/or omissions, plaintiff has suffered actual damages, including, but not limited to, lost wages, incidental damages, pain and suffering in the form of emotional distress, anxiety, embarrassment and humiliation, and attorneys' fees and costs.

WHEREFORE, plaintiff asks this Court to enter judgment in her favor against defendants, for damages described herein in an amount in excess of $50,000.00, plus attorneys' fees and costs.

## COUNT II
## IHRA, 775 ILCS 5/6-101(A)
### Retaliation
### *Against all Defendants*

51. Ms. Harmon-Beckwith realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

52. Defendants retaliated against Ms. Harmon-Beckwith, in violation of the IHRA, 775 ILCS 5/6-101(A), because she opposed conduct that she reasonably and in good faith believed to be unlawful discrimination, including but not limited to when she filed a charge of discrimination with the EEOC, and cross-filed with IDHR.

53. As a result of defendants' unlawful retaliation, Ms. Harmon-Beckwith suffered significant monetary loss, including loss of earnings and other benefits.

54. As a result of defendants' unlawful retaliation, Ms. Harmon-Beckwith suffered emotional pain, suffering, and other nonpecuniary losses.

WHEREFORE, plaintiff asks this Court to enter judgment in her favor against defendants, for damages described herein in an amount in excess of $50,000.00, plus attorneys' fees and costs.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Respectfully submitted,

/s/   Tamara Holder
Attorney for Plaintiff

Tamara N. Holder
The Law Firm of Tamara N. Holder LLC
917 West Washington Blvd., Suite 222
Chicago, Illinois 60607
312-440-9000
tamara@tamaraholder.com
ARDC: 6284888

**Certificate of Service**

I hereby certify that on February 16, 2023, I electronically filed the foregoing with the Court using the ECF system, which will send notification of the filing to all counsel of record.

/s/Tamara Holder